IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHLEEN FRANCES CURRAN and MARNI CSANKA (w/w)<br>30 Hancock Street<br>Auburndale, MA 02466<br>          Plaintiffs,<br><br>     v.<br><br>SHANTI CARLISLE HOSPITALITY, LLC d/b/a HOLIDAY INN EXPRESS & SUITES CARLISLE<br>2015 Raptor Court<br>Mechanicsburg, PA 17050<br><br>and<br><br>THYSSENKRUPP ELEVATOR CORPORATION a/k/a TK ELEVATOR CORPORATION<br>11605 Haynes Bridge Road, Suite 650<br>Alpharetta, GA 30009<br>          Defendants. | CIVIL ACTION<br>NO.: 1:21-cv-00899-JEJ<br><br><br><br><u>**JURY TRIAL DEMANDED**</u> |

**FIRST AMENDED CIVIL ACTION COMPLAINT**

1. Plaintiff, Kathleen Frances Curran [a/k/a "Kathy"] is an adult citizen of the Commonwealth of Massachusetts, currently residing at 30 Hancock Street, Auburndale, Massachusetts 02466.

2. Plaintiff, Marni Csanka, is an adult citizen of the Commonwealth of Massachusetts, currently residing at 30 Hancock Street, Auburndale, Massachusetts 02466. Ms. Csanka is the spouse of plaintiff, Kathy Curran.

3. Defendant, Shanti Carlisle Hospitality, LLC, d/b/a Holiday Inn Express & Suites Carlisle [a/k/a "Shanti"], at all times relevant hereto was a Professional Corporation, partnership, association, business, or other jural entity organized and operating under the laws of the

Commonwealth of Pennsylvania, with a registered address at 2015 Raptor Court, Mechanicsburg, Pennsylvania 17050 and conducting business at 1501 Commerce Avenue, Carlisle, Pennsylvania 17015.

4. The only member of Shanti is Akash K. Patel. He is a citizen and resident of the Commonwealth of Pennsylvania, residing therein at 2015 Raptor Court, Mechanicsburg, Pennsylvania 17050.

5. Defendant, Thyssenkrupp Elevator Corporation a/k/a TK Elevator Corporation [hereinafter referred to as "Thyssenkrupp"], at all times relevant hereto was a Professional Corporation, partnership, association, business, or other jural entity organized and operating under the laws of the State of Delaware, with its principal place of business located at 11605 Haynes Bridge Road, Suite 650, Alpharetta, GA 30009.

6. Federal jurisdiction in this action is predicated upon diversity of citizenship under statutory authority of 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00.

7. Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because (1) defendant is incorporated in the Commonwealth of Pennsylvania and (2) the acts and omissions that form the subject matter of this action occurred in this judicial district.

8. For purposes of diversity under 28 U.S.C. § 1332, defendant Shanti is incorporated in the Commonwealth of Pennsylvania, defendant Thyssenkrupp is incorporated in the State of Delaware and plaintiffs are citizens of the Commonwealth of Massachusetts.

**OPERATIVE FACTS**

9. Plaintiff, Kathy Curran, was born on December 14, 1964.

10. Plaintiff, Marni Csanka, was born on November 1, 1969.

11. Plaintiffs Kathy Curran and Marni Csanka are married.

12. On October 12, 2020 at approximately 9:00pm, plaintiffs, returning home from a funeral in South Carolina, arrived at the Holiday Inn Express & Suites Carlisle with their children.

13. Kathy Curran promptly checked into the hotel and was assigned a room on the third floor.

14. Once checked in, Kathy Curran proceeded to the room via the hotel elevators to prepare the room for her young children.

15. Shortly thereafter, Kathy Curran left the room and called an elevator to return to the lobby.

16. Kathy Curran entered the leftmost elevator when facing the bank and directed it to take her to the ground floor.

17. The elevator in question had been sold, installed, serviced and tested at the hotel one month prior to the accident by defendant, Thyssenkrupp.

18. As the elevator began to move, the passenger car dropped, freefalling approximately one story to the second floor, where it slammed to an abrupt, jarring halt.

19. Kathy Curran was knocked forward on impact, catching herself before falling to the ground.

20. On impact, Kathy Curran felt a sudden snap of her neck and immediately experienced neck pain and tightness.

21. In order to prevent other hotel guests from injury, Ms. Curran promptly reported the incident to the employee at the hotel front desk.

45

22. Initially believing the pain to be a severe case of whiplash, Kathy Curran attempted to treat it with stretching, ice, and ibuprofen.

23. On October 13, 2020, one day after the accident, Kathy Curran was evaluated by a doctor with the Beth Israel Deaconess Hospital, at which time the doctor noted that Kathy Curran's symptoms were likely due to cervical and MSK strain of the upper back.

24. The doctor recommended heat, massage and continued use of ibuprofen while monitoring the pain in the short term and advised that, if symptoms persisted, Kathy Curran should seek physical therapy, muscle relaxant treatment and x-ray imaging.

25. Despite the at-home remedies, Kathy Curran continued to experience severe neck discomfort and posterior head pain.

26. On November 20, 2020, Kathy Curran received an MRI at the direction of Newton Wellesley Orthopedic Associates ("NWOA"), due to persistent pain, dizziness and headaches from the elevator incident.

27. On November 30, 2020, Kathy Curran was seen and evaluated at NWOA by Dr. Daniel Banaszek, at which time Dr. Banaszek reported that the MRI revealed a broad-based paracentral disc herniation at the C6-C7 level, impingement upon the C7 nerve root and a small discrimination at C5-C6.

28. Dr. Banaszek prescribed a Medrol Dosepack and physical therapy for the ensuing six weeks.

29. From the period of December 10, 2020 to January 11, 2021, Kathy Curran was seen and treated by Athletic and Therapeutic Institute Physical Therapy (ATI), where she received physical therapy treatment on a weekly basis.

30. Despite regularly attending therapy as prescribed, Kathy Curran's symptoms, including pain, dizziness and headaches, persisted.

31. On January 13, 2021, Kathy Curran was seen and evaluated at New England Baptist Hospital by Dr. James Rainville, at which time she received additional radiological imaging.

32. Dr. Rainville advised Kathy Curran to temporarily cease physical therapy treatment as there was no evidence it would alleviate her symptoms.

33. As a direct and proximate cause of the defendants' negligence as set forth herein, Kathy Curran continues to experience severe, chronic pain in her neck, shoulders, back and right side.

34. As a direct and proximate cause of the defendants' negligence as set forth herein, Kathy Curran continues to experience trouble sleeping, limited range of motion, physical discomfort and an inability to keep up with her previously active lifestyle. The defendants' negligence has also negatively impacted Ms. Curran's relationship with her wife as well as her ability to join in activities with her young children.

35. As a direct and proximate result of the defendants' negligence as set forth herein, which was a substantial contributing factor that caused harm to Kathy Curran, she suffered the following injuries:

      a. Disc herniation at the C6-C7 level;

      b. Impingement on the C7 nerve root;

      c. Disc herniation at C5-C6;

      d. Need for additional or alternative therapies and the attendant side effects to those therapies;

  e. Need for additional or alternative surgeries and the attendant side effects to those surgeries;

  f. Embarrassment;

  g. Humiliation;

  h. Past physical pain and suffering;

  i. Future physical pain and suffering;

  j. Past depression, fear, anxiety, emotional distress and mental anguish;

  k. Future depression, fear, anxiety, emotional distress and mental anguish;

  l. Past loss of enjoyment of life's pleasures;

  m. Future loss of enjoyment of life's pleasures;

  n. Loss of earnings and earning capacity;

  o. Past medical expenses;

  p. Future medical expenses.

36. The injuries and economic and non-economic damages and losses suffered by Kathy Curran were caused exclusively by the negligence of the defendants and their agents, servants and/or employees, as identified in this pleading, and were not caused or contributed thereto by any action or inaction of plaintiffs.

**COUNT I – PREMISES LIABILITY**
**<u>PLAINTIFF, KATHLEEN FRANCES CURRAN v. DEFENDANT, SHANTI CARLISLE HOSPITALITY, LLC d/b/a HOLIDAY INN EXPRESS & SUITES CARLISLE</u>**

37. The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

38. On October 12, 2020, Kathy Curran was a paying guest of the Holiday Inn Express & Suites Carlisle.

39. On October 12, 2020, defendant Shanti was the sole operator of the Holiday Inn Express & Suites Carlisle.

40. The negligent acts and omissions of defendant Shanti in the maintenance, testing and upkeep of the Holiday Inn Express & Suites Carlisle elevators, as set forth in the predicate facts stated above, consisted of the following:

    a. Failure to ensure elevators were operating in safe, functional condition on October 12, 2020;

    b. Failure to conduct adequate, regular maintenance on elevators to ensure safe operation;

    c. Failure to conduct routine testing of elevators to ensure safe operation;

    d. Failure to ensure proper installation of elevators and accompanying equipment;

    e. Failure to adequately warn hotel guests of the danger presented by unsafe condition of elevators;

    f. Providing an elevator for use by patrons that was not in proper working order;

    g. Providing an elevator for use by patrons that engaged in a free fall;

    h. Providing an elevator for use by patrons that failed to descend at a proper speed;

      i.      Failing to conduct proper testing and inspections of the subject elevator prior to the date of injury.

41. As a direct consequence of defendant Shanti's conduct, plaintiff, Kathy Curran, has suffered and continues to suffer extensive and severe injuries as set forth herein.

WHEREFORE, plaintiffs, Kathy Curran and Marni Csanka demand judgment against the defendants in an amount in excess of local arbitration limits, exclusive of pre-judgment interest, costs and post-judgment interest and costs.

### COUNT II - NEGLIGENCE
### PLAINTIFFS v. DEFENDANT, THYSSENKRUPP ELEVATOR CORPORATION

42. The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

43. As stated above, the subject elevator had been sold and installed at the hotel one month prior to the accident by defendant Thyssenkrupp.

44. The elevator was subject to a warranty and service agreement.

45. It is believed that the subject elevator was the subject of a maintenance contract US 191721 with Thyssenkrupp. Said contract has been requested of Thyssenkrupp's third party administrator but has not been provided to date.

46. Defendant Thyssenkrupp sold, installed, serviced and tested the elevator through a November 7, 2018 Thyssenkrupp subcontract with the general contractor, Weaver Construction.

47. The negligent acts and omissions of defendant Thyssenkrupp consisted of the following:

      a.      Failing to properly construct, provide, install, service, test and maintain the subject elevator;

b. Failure to ensure the elevator was operating in a safe, functional condition on October 12, 2020;

c. Failure to conduct adequate, regular maintenance on the elevator to ensure safe operation;

d. Failure to conduct appropriate testing of elevators to ensure safe operation;

e. Failure to ensure proper installation of the elevator and accompanying equipment;

f. Failure to adequately warn hotel guests of the danger presented by unsafe condition of elevators;

g. Providing an elevator for use by patrons that was not in proper working order;

h. Providing an elevator for use by patrons that engaged in a free fall;

i. Providing an elevator for use by patrons that failed to descend at a proper speed;

j. Failing to conduct proper testing and inspections of the subject elevator prior to the date of injury.

48. As a direct consequence of defendant Thyssenkrupp's conduct, plaintiff, Kathy Curran, has suffered and continues to suffer extensive and severe injuries as set forth herein.

WHEREFORE, plaintiffs, Kathy Curran and Marni Csanka demand judgment against the defendants in an amount in excess of local arbitration limits, exclusive of pre-judgment interest, costs and post-judgment interest and costs.

## COUNT III - BREACH OF EXPRESS AND IMPLIED WARRANTIES
## PLAINTIFFS v. DEFENDANT, THYSSENKRUPP ELEVATOR CORPORATION

49. The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

50. Pursuant to its contract with Weaver, defendant Thyssenkrupp warranted as follows:

> F. The Subcontractor warrants that all materials and equipment furnished and incorporated by it in the Project shall be new unless otherwise specified, and that all Work under this Subcontract shall be of good quality, free from faults and defects and in conformance with the Contract Documents. All work not conforming to these standards may be considered defective. The warranty provided in the provision shall be in addition to and not in limitation of any other warranty or remedy accorded by law or by the Contract Documents.

51. It is believed and therefore averred that the maintenance contract will have similar language and obligations for defendant Thyssenkrupp.

52. At all times, defendant Thyssenkrupp expressly and impliedly warranted that the materials provided and the work performed would be of good and workmanlike quality and free of all defects of the nature alleged by plaintiffs.

53. The negligent acts and omissions of defendant Thyssenkrupp consisted of the following:

    a. Failing to properly construct, provide, install, service and maintain the subject elevator;

    b. Failure to ensure the elevator was operating in a safe, functional condition on October 12, 2020;

    c. Failure to conduct adequate, regular maintenance on the elevator to ensure safe operation;

    d. Failure to conduct appropriate testing of elevators to ensure safe operation;

52

  e. Failure to ensure proper installation of the elevator and accompanying equipment;

  f. Failure to adequately warn hotel guests of the danger presented by unsafe condition of elevators;

  g. Providing an elevator for use by patrons that was not in proper working order;

  h. Providing an elevator for use by patrons that engaged in a free fall;

  i. Providing an elevator for use by patrons that failed to descend at a proper speed;

  j. Failing to conduct proper testing and inspections of the subject elevator prior to the date of injury.

54. As a direct consequence of defendant Thyssenkrupp's conduct, plaintiff, Kathy Curran, has suffered and continues to suffer extensive and severe injuries as set forth herein.

WHEREFORE, plaintiffs, Kathy Curran and Marni Csanka demand judgment against the defendants in an amount in excess of local arbitration limits, exclusive of pre-judgment interest, costs and post-judgment interest and costs.

**COUNT IV - STRICT LIABILITY**
**<u>PLAINTIFFS v. DEFENDANT, THYSSENKRUPP ELEVATOR CORPORATION</u>**

55. The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

56. The subject elevator was manufactured, sold, supplied and installed by defendant Thyssenkrupp.

53

57. Defendant Thyssenkrupp is strictly liable for the manufacture, sale, supply and installation of the defective elevator.

58. Defendant Thyssenkrupp sold, supplied, designed and installed the subject elevator, which was in a defective condition at all times relevant hereto.

59. The subject elevator, sold, supplied, designed and produced by defendant Thyssenkrupp, failed to perform as safely as an ordinary consumer would expect when used as intended or in a foreseeable manner.

60. As a direct consequence of defendant Thyssenkrupp's conduct, plaintiff, Kathy Curran, has suffered and continues to suffer extensive and severe injuries as set forth herein.

WHEREFORE, plaintiffs, Kathy Curran and Marni Csanka demand judgment against the defendants in an amount in excess of local arbitration limits, exclusive of pre-judgment interest, costs and post-judgment interest and costs.

**COUNT V – LOSS OF CONSORTIUM**
**PLAINTIFF, MARNI CSANKA v. DEFENDANTS**

61. The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

62. As a result of the negligent acts and omissions of the defendant as set forth in this Complaint, plaintiff, Marni Csanka, has suffered the loss of services and society of her wife, Kathy Curran, in the past, and will continue to do so in the future, and therefore, claims the full measure of damages allowed under Pennsylvania law for the loss of consortium of her wife, Kathy Curran.

**WHEREFORE**, plaintiffs, Kathy Curran and Marni Csanka demand judgment against the defendants in an amount in excess of local arbitration limits, exclusive of pre-judgment interest, costs and post-judgment interest and costs.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

Dated: 10/5/21

_____
THOMAS R. KLINE, ESQUIRE
DOMINIC C. GUERRINI, ESQUIRE
Identification Nos: 28895/91311
thomas.kline@klinespecter.com
dominic.guerrini@klinespecter.com
1525 Locust Street
Philadelphia, PA 19102
(215) 772-1000
*Attorneys for Plaintiffs*